# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **MISSION COAL WIND DOWN CO LLC,** | ) | **Case No. 18-04177-TOM-11** |
| *et al.*, | ) | |
| | ) | |
| **Debtors.** | ) | |

_____

| | | |
|---|---|---|
| **SEAN C. SOUTHARD, in his capacity as** | ) | |
| **the Liquidating Trustee of the Mission** | ) | |
| **Liquidating Trust,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **A.P. No. 19-00089-TOM** |
| vs. | ) | |
| | ) | |
| **THOMAS M. CLARKE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the Liquidating Trustee's Motion for Summary Judgment (AP Doc. 23), the Supplement to Liquidating Trustee's Motion for Summary Judgment (AP Doc. 47), and the Second Supplement to Liquidating Trustee's Motion for Summary Judgment (AP Doc. 48) filed by the Plaintiff, Sean C. Southard, in his capacity as the liquidating trustee (the "Plaintiff" or the "Trustee") of the Mission Liquidating Trust (the "Trust"),[1] and the

---

[1] The Liquidating Trust is "that certain trust to be created on the Plan Effective Date, solely for the purposes of receiving and distributing, as applicable, the Liquidating Trust Assets and not for any other purposes . . . ." Order Confirming the Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of Its Debtor Affiliates, Ex. A, at 13, BK Doc. 1324. In turn, the Liquidating Trust Assets are:
    (i) the funds payable to the Reorganized Debtors pursuant to the Plan, including (A) the Clarke/McCoy Notes to be held in trust by the Liquidating Trustee for payment of certain Allowed Priority claims, and to the extent applicable under the Committee Settlement, distributions to Holders of General Unsecured Claims, and (B) the Jason McCoy Note and the Clarke Note to be held in trust by the Liquidating Trustee for distributions to Holders of General Unsecured Claims . . . .
*Id*.

Defendant's Response to Liquidating Trustee's Motion for Summary Judgment (Doc. 76) filed by the Defendant, Thomas Clarke (the "Defendant" or "Clarke").  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[2]  This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O).[3]  This Court has considered the pleadings, the arguments of counsel, the exhibits, the testimony, and the law, and finds and concludes as follows:[4]

## PROCEDURAL HISTORY

The Trustee filed a Complaint (the "Complaint") commencing this adversary proceeding against the Defendant on December 4, 2019.  AP Doc. 1.  The Defendant responded to the Complaint by filing the Defendant's Motion to Dismiss and, in the Alternative, Motion to Transfer Venue (the "Motion to Dismiss") on January 2, 2020.  AP Doc. 4.  On January 9, 2020, the Trustee filed a Response to the Motion to Dismiss (AP Doc. 7), which was followed by Clarke's Amended Motion to Dismiss, and, in the Alternative, Motion to Transfer Venue (the "Amended Motion") on January 21, 2020.  AP Doc. 10.  On January 28, 2020, the Trustee filed his Response to the Amended Motion.  AP Doc. 11.  Clarke's Motion to Dismiss and Amended Motion to Dismiss

---

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. §157(b)(2)(A), (E), and (O) provide as follows:
> (b)(2) Core proceedings include, but are not limited to–
> (A) matters concerning administration of the estate;
> . . . .
> (E) orders to turn over property of the estate;
> . . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . [.]

[4] This Memorandum Opinion [and Order] constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

were denied by this Court's Order of January 28, 2020.[5] AP Doc. 13. Clarke filed an Answer to the Trustee's Complaint (the "Answer") on February 11, 2020. AP Doc. 17.

The Motion for Summary Judgment (the "Motion") now before the Court was filed by the Trustee on March 19, 2020 (AP Doc. 23), followed by a Supplement to Motion for Summary Judgment (AP Doc. 47) on June 22, 2020, and Second Supplement to Motion for Summary Judgment (AP Doc. 48) on July 29, 2020. On September 15, 2020, Clarke filed his Response to Liquidating Trustee's Motion for Summary Judgment (the "Response"). AP Doc. 76.

## FINDINGS OF FACT[6]

On October 14, 2018, Mission Coal Wind Down Co, LLC, formerly known as Mission Coal Company, LLC, and certain of its affiliates (collectively, the "Debtors")[7] each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in this Court. On October 16, 2018, the Court entered an Order (BK Doc. 63) authorizing the joint administration and procedural consolidation of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

The Debtors' Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of its Debtor Affiliates ("the Plan," BK Doc. 1310) was confirmed by this Court's Order

---

[5] Clarke filed several other motions in this adversary proceeding, including a Motion to Disqualify the Trustee's counsel (AP Doc. 21) and a Motion for Stay of Discovery (AP Doc. 25). After this Court denied both motions (AP Docs. 31, 32), Clarke filed a Motion for Reconsideration (AP Doc. 37) regarding the Motion for Stay of Discovery. The Motion for Reconsideration was denied on May 7, 2020 (AP Doc. 44).

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[7] The Debtors include: Mission Coal Wind Down Co, LLC f/k/a Mission Coal Company, LLC; Beard Pinn Wind Down Co, LLC f/k/a Beard Pinnacle, LLC; OG Land Wind Down Co, LLC f/k/a Oak Grove Land Company, LLC; OG Resources Wind Down Co, LLC f/k/a Oak Grove Resources, LLC; Pinn Land Wind Down Co, LLC f/k/a Pinnacle Land Company, LLC; Pinn MC Wind Down Co, LLC f/k/a Pinnacle Mining Company, LLC; Sem AL MV Wind Down Co, LLC f/k/a Seminole Alabama Mining Complex, LLC; Seneca Coal Resources Wind Down Co, LLC f/k/a Seminole Coal Resources, LLC; Seminole WV MC Wind Down Co, LLC f/k/a Seminole West Virginia Mining Complex, LLC; Sem Coal Resources Wind Down Co, LLC f/k/a Seneca Coal Resources, LLC; and Sen NA Coal Wind Down Co, LLC f/k/a Seneca North American Coal, LLC. The term "Reorganized Debtors" refers to each of the Debtors as reorganized pursuant to the Plan.

3

dated April 15, 2019 (the "Confirmation Order"). BK Doc. 1324. The Plan, as confirmed by the Order, contained a settlement (the "Settlement") wherein Clarke agreed to execute two promissory notes for the benefit of the Debtors' creditors. *See* BK Doc. 1310, Art. IV, ¶¶ E-F. During this time Clarke was represented by the law firms of Dentons US LLP and Benton & Centeno, LLP. BK Docs. 271, 345, 346.[8] In addition, Clarke had representation in the form of in-house counsel Astrika Adams and Tim Dixon. Clarke Dep. 61:3, AP Doc. 48-1.

As required by the Plan and Confirmation Order, Clarke executed a Promissory Note payable to the Reorganized Debtors dated April 29, 2019, in the principal amount of $1,000,000 (the "First Clarke Note"). AP Doc. 23, Ex. A. Pursuant to its terms, interest accrues on the unpaid principal amount of the First Clarke Note on a daily basis beginning on the effective date of the Plan, April 30, 2019 (the "Plan Effective Date"), at an annual rate of 5.00%, payable in equal quarterly installments of principal plus accrued and unpaid interest, commencing on June 30, 2019 and terminating on March 31, 2022. *Id*. Additionally, as required by the Plan and Confirmation Order, Clarke executed a separate Promissory Note payable to the Reorganized Debtors dated April 29, 2019, in the principal amount of $6,000,000 (the "Second Clarke Note;" the First Clarke Note, together with the Second Clarke Note, may be referred to herein as the "Notes"). AP Doc. 23, Ex. B. Pursuant to its terms, interest accrues on the unpaid principal amount of the Second Clarke Note on a daily basis beginning on the Plan Effective Date at an annual rate of 5.00%, payable in equal quarterly installments of principal plus accrued and unpaid interest, commencing on June 30, 2019 and terminating on March 31, 2024. AP Doc. 23. Both Notes provide that they are to be governed by Delaware law. AP Doc. 23, Exs. A, B. Pursuant to that certain General

---

[8] Dentons US LLP withdrew as counsel on January 3, 2019 (BK Doc. 530) and Benton & Centeno, LLP withdrew as counsel on May 24, 2019 (BK Doc. 1446).

Assignment and Bill of Sale (the "Assignment") dated April 29, 2019, the Reorganized Debtors assigned the Notes to the Trust. AP Doc. 23, Ex. C.

The Trustee filed this adversary proceeding against Clarke asserting breach of contract for failure to pay the Notes, and seeks money damages, accruing interest, and costs incurred in connection with collecting the Notes.[9] After Clarke's Motion to Dismiss and Amended Motion to Dismiss were filed and then denied by this Court, Clarke filed his Answer in which he admitted that he executed each of the Notes and raised affirmative defenses to the Complaint, including coercion and duress, anticipatory breach of contract, and undue influence.[10]

The Motion for Summary Judgment is supported by the Declaration of Sean C. Southard in Support of Liquidating Trustee's Motion for Summary Judgment ("Southard's Declaration"), the Affidavit of Stephen Porterfield in Support of Attorneys' Fees Requested by Plaintiff (Porterfield's Affidavit"), copies of both Notes, copies of demand letters sent to Clarke on August 1, 2019 and August 2, 2019 (the "Demand Letters"), and other documents filed with the Motion. According to the Motion and Southard's Declaration, Clarke's first payments on the Notes were due to be paid on June 30, 2019 in the amounts of $90,258.31 and $340,922.34, respectively; however, Clarke failed to make the payments. Southard's Decl., AP Doc. 23, Ex. H. The Trustee asserts that, pursuant to the Notes, he notified Clarke of the defaults and demanded payment by October 1, 2019. Southard's Decl., AP Doc. 23, Ex. H; Demand Letters, AP. Doc. 23, Exs. D – G. Clarke did not make payment by October 1, 2019, which, according to the Trustee, "constituted

---

[9] *See infra* at 6.
[10] Clarke raised six other affirmative defenses: failure to state a claim, failure to provide notice that the Notes were assigned to the Trustee and evidence of the assignment, the doctrines of waiver, estoppel, laches, and unclean hands; statute of limitations, fraud, and failure of consideration. These six affirmative defenses were merely listed without allegations.

an event of default, resulting in the entire principal and the accrued and unpaid interest" on each of the Notes becoming immediately due and payable. Southard's Decl., AP Doc. 23, Ex. H.

The Trustee asserts that, as of February 24, 2020, Clarke owed a total of $1,041,097, comprised of principal in the amount of $1,000,000 and interest in the amount of $41,097.00 on the First Clarke Note[11] and a total of $6,246.576.00, comprised of principal in the amount of $6,000,000 and interest in the amount of $246,576.00 on the Second Clarke Note as of February 24, 2020, for a total owed in the amount of $7,287,673.00 on both Notes.[12] *Id.* Interest continues to accrue at the rate of $136.99 per day and $821.92 per day on the First Clarke Note and Second Clarke Note, respectively. *Id.* In the Motion the Trustee asserts Clarke is responsible for attorneys' fees. The Notes allow collection of "reasonable attorneys' fees and costs, including the fees and costs incurred in any appeals, and any collection fees incurred in collection" of the Notes. First Clarke Note, AP Doc. 23, Ex. A; Second Clarke Note, AP Doc. 23, Ex. B. The Trustee contends that reasonable attorneys' fees should be calculated at 2.5% of the principal, plus interest, for each Note, resulting in attorneys' fees of $26,027.42 for the First Clarke Note, and $156,164.40 for the Second Clarke Note. Southard Decl., Doc. 23, Ex. H. In support, the Trustee relies on the Affidavit of Stephen Porterfield, an attorney practicing in the areas of bankruptcy and commercial litigation in Alabama who had no part in the underlying bankruptcy cases or in this adversary proceeding. Porterfield's Aff., AP Doc. 23, Ex. I.

The Trustee filed two supplements to the original Motion. The first supplement includes Defendant's Response to Plaintiff's First Set of Interrogatories, Plaintiff's First Set of Requests

---

[11] The Trustee's calculations as to the First Clarke Note: $1,000,000 x 5% interest = $50,000.00 / 365 = $136.99 per day x 300 days since Plan Effective Date, which equals $41,097.00 as of February 24, 2020. AP Doc. 23 at 7 n.4.
[12] The Trustee's calculations as to the Second Clarke Note: $6,000,000 x 5% interest = $300,000 / 365 days = $821.92 per day x 300 days since Plan Effective Date, which equals $246,576.00 as of February 24. 2020. AP Doc. 23 at 7 fn.5.

6

for Production of Documents and Plaintiff's First Set of Requests for Admission (the "Discovery Responses"). Clarke denies in his Discovery Responses that Dentons US LLP and Benton & Centeno, LLP represented him from October 14, 2018 through April 15, 2019; however, he admits that attorney Lee Benton signed the Settlement on his behalf and with his authorization. Clarke also admits that he did not object to confirmation, that he signed the Notes, and that he has not made payment on the Notes. Clarke includes in his Discovery Responses his allegations that the Notes were signed under coercion and undue influence.

The Trustee's second supplement contains a transcript from Clarke's July 14, 2020 deposition. According to his testimony, Clarke agreed to pay two million dollars to the Debtors' estate and sign the Notes,[13] which he intended to pay from money owed to him by the McCoys.[14] Clarke Dep. 81:11-19, 25, 82:1, AP Doc. 48-1. Clarke testified in the deposition that he made a "business decision" to enter into the Settlement at a time when he had the resources to pay the Notes, but he asserted that he no longer has the funds to pay.[15] Clarke Dep. 67:11-15, 81:20-21, 81:25-82:8, 92:2-19, 93:10-13, AP Doc. 48-1. His testimony further reflects that he would have paid the Notes if he had the resources to do so; however:

> Well, there was a point where I realized the McCoys weren't going to pay and it was going to be very difficult to extract cash out of them, and then the loss of my

---

[13] Clarke further explained that "[n]ine million dollars is a small sum to pay for, you know, the – you know, whether it's fair or not, what you're going to encounter if you don't contribute to the settlement." Clarke Dep. 92:21-24, AP Doc. 48-1.

[14] Jason McCoy and Kenneth McCoy are a father and son who, like Clarke, are businessmen with prior dealings with the Debtors. Also, like Clarke, the McCoys signed promissory notes payable to the Debtors. Both Kenneth McCoy and Jason McCoy signed one promissory note, while Jason McCoy signed another individually. Some of the terms of the notes signed by the McCoys differ from the terms in the Clarke Notes. *See* Order Confirming the Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of Its Debtor Affiliates, Ex. A, at 13-14, BK Doc. 1324.

[15] Clarke explained during the deposition that he has been unable to collect from the McCoys:
> What happened is they made one bad business decision after another and I tried to bail them out and rescue them, but they lost all of their equity in a very valuable asset and it's being foreclosed . . . . [W]e had an asset that Goldman Sachs, Bank of Montreal and Jefferies all valued at a billion dollars on the equity and, you know, they owned thirty percent . . . . They squandered it all . . . .

Clarke Dep. 98:23 – 99:5, AP Doc. 48-1.

7

> oil and gas company and my offshore construction company and the complete collapse of the mining sector, you know, left me in a situation where I didn't have the ability to meet any of my obligations. I didn't even have the ability to obtain counsel. . . . [W]hen the lawsuit was filed, I decided I would have to defend myself and . . . I was still hoping the promissory notes would get paid, but the only place I see that happening is from is liquidation of illiquid assets that I hold and disgorgement of fees from those people that I believe, you know, unduly, you know, coerced me into executing the agreement and, you know, they benefitted from that undue influence.

Clarke Dep. 96:23 – 97:13, AP Doc. 48-1.

Clarke also admits to signing the Notes in his Answer and Response; however, in those filings he alleges affirmative defenses excusing his failure to pay or barring the Trustee's claim against him. As to one of these defenses, anticipatory breach, Clarke contends that his "performance under the Notes was excused due to the Trustee's, Plan Administrator's. and/or Reorganized Debtor's anticipatory breaches." AP Doc. 17 at 11. For example:

> The Plan Administrator and its assigns including the Trustee have breached their duty to the Reorganized Debtors by failing to respond to communications from Clarkes related to the delivery of sensitive Reorganized Debtors' information that has continuously been delivered to Clarke since May 1, 2019. Neither Plan Administrator nor the Trustee has taken any action to relieve Clarke of the economic burden of receiving, storing, and responding appropriately to the Reorganized Debtors' mailings and related information[.]

*Id*.[16] While Clarke makes allegations as to anticipatory breach in the Answer, he does not argue in his Response that the affirmative defense applies, and never explains how the alleged breaches excuse him from paying the Notes.

The bulk of Clarke's opposition to the Motion relies on the affirmative defenses of coercion and duress and undue influence. In his Response to the Motion, Clarke relies primarily on the argument that, although he signed the Notes, he did so only because of the pressure put on him by

---

[16] Clarke also states that because the Debtors failed to pay certain claims, "permit blocks" against the McCoys were not released, resulting in "material prejudice" against him since he "has been unable to conduct certain business in the coal industry such as transferring mining permits from one entity to a third-party purchaser, "thus preventing repayment of loans by such entity to Clarke." AP Doc. 17 at 11-12.

8

professionals involved in the case, namely attorney Stephen Hessler of the law firm of Kirkland & Ellis LLP, counsel for the Debtors, and Leon Szlezinger of Jefferies LLC,[17] investment banking firm for the Debtors. AP Doc. 76 at 4. Clarke claims that he "previously worked with both firms on several occasions," *Id*. at 2, and alleges that he was subject to undue influence by his "prior working relationship with and trust in both Hessler and Szlezinger . . . ." *Id*. Further, "through false statements, duress, and coercion by Mr. Hessler and Mr. Szlezinger, he was induced to execute the Note."[18] *Id*. at 2. While in the Response Clarke references a few occasions when one firm or the other was involved in business deals that Clarke (or businesses that Clarke had some ownership in) also had a connection to, he never alleges in the Response any circumstances in which either Kirkland & Ellis LLP or Jefferies LLC represented Clarke himself, or in which he previously had dealings with either Hessler or Szlezinger themselves. However, Clarke asserts in his Answer that "[o]n July 25, 2018, Kirkland & Ellis . . . was engaged by the Debtors as well as Lara Natural Resources, LLC . . . to advise them, their officers, and their members of the legal ramifications and pathways of a potential restructuring, including bankruptcy." AP Doc. 17 at 6. Clarke claims that Lara Natural Resources, LLC ("Lara"), wholly owned by Clarke and his wife, concluded in September or October of 2018 that Lara would not file bankruptcy, "based upon communications with K&E from July of 2018 through September of 2018 . . . ." *Id*.

In Clarke's Answer he explains that he met with the Unsecured Creditors Committee ("UCC") and the Debtors in March 2019 about documents Clarke and "others" had produced regarding the Debtors and Lara. *Id*. at 7. According to Clarke, the UCC informed him during the

---

[17] Szlezinger was the Managing Director and the Joint Global Head of Restructuring & Recapitalization at Jefferies LLC. BK Doc. 236.

[18] Throughout the Response, Clarke refers to "a note" executed on April 29, 2019. Clarke admitted in his Answer that he executed both Notes. It is unclear whether Clarke is intentionally referring to only one of the notes that he executed, or if the reference to only one is in error. Regardless, since Clarke admittedly signed both Notes, the Court assumes his Response encompasses both Notes.

9

meeting that he was "liable in excess of $50,000,000" and that in order to avoid suit Clarke would need to pay more than $20,000,000. *Id*. Clarke contends that the demand was made despite the Debtors' possession of documents that would disprove the UCC's claims. *Id*.

Clarke contends in the Response that during a call between Hessler and Clarke, Hessler "painted a very dire picture of the possible outcomes" including "exhaustive litigation with demands much higher what [Hessler] was suggesting Clarke contribute to the bankruptcy estate." AP Doc. 76 at 4. According to Clarke, in another call, "Hessler suggested without a cash contribution from Clarke, Mission would be unable to confirm its Plan of Reorganization" and thus Clarke should pay money at closing and sign notes requiring additional payments. *Id*. at 5. As to Szlezinger's representations, Clarke asserts that he was told by Szlezinger of the possibility that a liquidation would occur, "expos[ing] all equity holders to a hostile Committee of Unsecured Creditors who would seek substantial damages from the equity investors," and thus to "avoid litigation and untrue claims being made against" him he should pay cash at the closing. *Id*. Clarke contends that he was thus led "to believe he would unfairly be in a worse position if he did not execute the Note and make [a $2,000,000.00] payment at closing." *Id*. at 4. In sum, Clarke takes the position that he signed the Notes only because he feared that his situation would be worse if he did not settle. Clarke did not submit affidavits or other evidence, or cite to any portions of the record, to support his affirmative defenses.

## **CONCLUSIONS OF LAW**

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable in adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56 provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense - or
> the part of each claim or defense - on which summary judgment is sought. The

10

> court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 - 23 (1986). The court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "'[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); see also *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1986). Once the moving party has satisfied its burden of proof by proving the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to offer evidence of specific facts which prove the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

"In a breach of contract action, Alabama courts apply the law of the state where the contract was made, unless the parties choose a different state's laws to govern their agreement." *Wells Fargo Bank, Nat'l Ass'n v. Choice Med.: Hwy 53 Med. Ctr.*, Civil Action Number 5:19-cv-00247-AKK, 2020 WL 2557927, at *2 n.3 (N.D. Ala. May 20, 2020) (citing *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004)).

By their terms, the Notes are governed by Delaware law, which provides that "to sustain a breach of contract claim, the plaintiff must establish (1) the existence of an express or implied contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damages to the

11

plaintiff." *Riverboat Grp., LLC v. Ivy Creek of Tallapoosa, LLC*, No. 3:18-CV-147-WC, 2019 WL 5270159, at *3 (M.D. Ala. Oct. 17, 2019) (citing *Edelstein v. Goldstein*, No. CIV.A.09C-05-034DCS, 2011 WL 721490, at *5 (Del. Super. Ct. Mar. 1, 2011)). *See also VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *Hawaiiweb, Inc. v. Experience Hawaii, Inc.*, No. 1:16-CV-00405-WSD, 2017 WL 382617, at *4 (N.D. Ga. Jan. 27, 2017).

In this case the Trustee has established that there is no genuine issue of material fact as to the breach of contract claim. The Notes were admittedly signed by Clarke, the first payments required by the Notes came due, Clarke did not make the payments, the Trustee sent Clarke the required notice regarding the missing payments, and Clarke still did not make payments within the time allowed for him to cure. The Court concludes there is no genuine issue of material fact remaining regarding the Trustee's assertion that Clarke's failure to make the payments constituted a breach of contract, and as a result, the Trustee has suffered damages consisting of the unpaid principal, interest, and attorneys' fees as provided by the Notes.

While Clarke has admitted that he signed the Notes and that payments have not been made, he has raised affirmative defenses as to their enforcement. "An affirmative defense admits the facts of the complaint and asserts additional facts in justification or avoidance of a claim." *Ctr. Hill Cts. Condo. Ass'n., Inc. v. Rockhill Ins. Co.*, Case No. 19-cv-80111-BLOOM/Reinhart, 2020 WL 442467, at *7 (S.D. Fla. Jan. 28, 2020) (quoting *Biscayne Cove Condo. Ass'n., Inc. v. QBE Ins. Corp.*, 951 F. Supp. 2d 1292, 1305 (S.D. Fla. 2013)). "[A]lthough an affirmative defense 'does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Mid-Cont'l Cas. Co. v. Active Drywall S., Inc.* 765 F. Supp. 2d 1360, 1360 (S.D. Fla. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

12

Clarke raised a total of nine affirmative defenses in his Answer: failure to state a claim, coercion and duress, anticipatory breach, failure to provide notice that the Notes were assigned to the Trustee and evidence of the assignment, the doctrines of waiver, estoppel, laches, and unclean hands; statute of limitations, undue influence, fraud, and failure of consideration. Out of these, only three – coercion and duress, anticipatory breach, and undue influence – were given any treatment by Clarke beyond being merely included in a laundry list of affirmative defenses.

The bulk of the defenses - failure to state a claim, failure to provide notice that the Notes were assigned to the Trustee and evidence of the assignment, the doctrines of waiver, estoppel, laches, and unclean hands; statute of limitations, fraud, and failure of consideration – may be quickly disposed of pursuant to the Court's authority to strike insufficient defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f), made applicable in adversary proceedings pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, provides:

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). *See also Easlick v. Cooper (In re Cooper)*, Case No. 6:11-bk-05364-KSJ, Adversary No. 6:11-ap-00139-KSJ, 2013 WL 5278933, at *1 (Bankr. M.D. Fla. Sept. 19, 2013) (a court may *sua sponte* strike matters in a pleading pursuant to Rule 12(f) of the Federal Rules of Civil Procedure). Because Clarke has done nothing more than simply list them, the Court, *sua sponte*, strikes the affirmative defenses of failure to state a claim, failure to provide notice that the Notes were assigned to the Trustee and evidence of the assignment, the doctrines of waiver, estoppel, laches, and unclean hands; statute of limitations, fraud,[19] and failure of consideration.

---

[19] Clarke gives slightly more treatment to fraud than he did the other affirmative defenses being struck by the Court, but only in the sense that he listed the elements of fraud in his Response. Although Clarke did not plead the defense

13

Clarke's affirmative defenses of coercion and duress, anticipatory breach, and undue influence remain. Affirmative defenses raised at the summary judgment stage "must be supported by evidence or present a genuine issue of material fact in the evidence or they will not contradict the [m]otion." *Harvey v. Lake Buena Vista Resort, LLC*, 569 F. Supp. 2d 1354, 1361 (M.D. Fla. 2008). It has been explained:

> "[O]n a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable," *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D.Fla.1997) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir.1990)), and it is "[o]nly upon such a showing [that] the burden shift[s] to [a] plaintiff regarding that affirmative defense," *Paul*, 985 F.Supp. at 1470 (citing *Weitz*, 913 F.2d at 1552 n. 13). "The reason is that the defendant bears the burden of proof on his affirmative defenses at trial." *Paul*, 985 F.Supp. at 1470 (citing *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550–51 (11th Cir.1990)).

*Wells Fargo Bank, N.A. v. Trotman*, 940 F. Supp. 2d 1359, 1368 n.8 (M.D. Ala. 2013) (first alteration added).

In his Answer Clarke alleges that his "performance under the Notes was excused due to the Trustee's, Plan Administrator's, and/or Reorganized Debtor's anticipatory breaches." AP Doc. 17 at 11. "A refusal to perform contractual obligations constitutes a repudiation of the contract and an anticipatory breach of the agreement." *Tenneco Auto., Inc. v. El Paso Corp.*, No. CIV.A. 18810-NC, 2007 WL 92621, at *6 (Del. Ch. Jan. 8, 2007). *See also CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000) ("Under Delaware law, repudiation is an outright refusal by a party to perform a contract or its conditions entitling 'the other contracting party to treat the contract as rescinded.'") (quoting *Sheehan v. Hepburn*, 138 A.2d 810, 812 (Del. Ch. 1958)). "A repudiation of a contract is an outright refusal by a party to perform a contract or its

---

of fraudulent inducement in his Answer, he uses the phrase fraudulent inducement in his Response in his discussion of coercion and undue influence. It does not appear to the Court that Clarke was attempting to argue the separate affirmative defense of fraudulent inducement. Regardless, any attempt that he may have made to do so fails as his mere mentions of the defense are not enough to show there is a genuine issue for trial. *See infra*.

14

conditions. Repudiation may be accomplished through words or conduct, but must be positive and unconditional." *Darby Emerging Mkts. Fund, L.P. v. Ryan,* No. CV 8381-VCP, 2013 WL 6401131, at *11 (Del. Ch. Nov. 27, 2013).

While Clarke sets out in his Answer rather elaborate descriptions of how anticipatory breaches have occurred, he fails to explain how any of the alleged breaches excuse him from paying the Notes. The only count in the Trustee's Complaint is for breach of contract, i.e., Clarke's failure to pay the Notes according to their terms. The obligations that Clarke contends were breached are not found in the specific terms of the Notes, and there has been nothing brought to this Court's attention that ties the alleged breaches to any performance due under the Notes; thus, there is no genuine issue of material fact regarding whether the alleged breaches signaled to Clarke that the Trustee was refusing to perform any obligation he had under the contract. In addition, there is no evidence to support Clarke's bare allegations. Without more, Clarke's affirmative defense of anticipatory breach fails.[20]

Under Delaware law, "[u]ndue influence exists when the following four elements are present: 1) a person is subject to influence; 2) an opportunity to exert undue influence; 3) a disposition to exert such influence; and 4) a result indicating the presence of undue influence." *Patrick v. Ellis*, C.A. No. N12C–05–220 MJB, 2013 WL 5800908, at *5 (Del. Oct. 18, 2013) (footnotes omitted). Where "no confidential or fiduciary relationship exists between the parties, no presumption of undue influence exists, and the party asserting the claim of undue influence bears the burden of proof." *D.L.K. v. T.M.K.*, No. CN03-06800, 03-07575, 2004 WL 3245797, at *2 (Del. Fam. Ct. Nov. 18, 2004) (footnote omitted). In turn, "the 'rule of thumb' is that [a

---

[20] Again, the Court notes that Clarke addresses anticipatory breach only in his Answer, and not in his Response to the Motion. The Court makes no determination whether an affirmative defense raised in an answer but not argued in an opposition to a motion for summary judgment could be enough to defeat the motion for summary judgment.

15

confidential or fiduciary relationship] exists when 'circumstances make it certain the parties do not deal on equal terms, but on one side there is an overmastering influence or on the other weakness, dependence or trust, justifiably reposed.'" *Minieri v. Bennett*, C.A. No. 4792–ML, 2013 WL 6113911, at *15 (Del. Ch. Nov. 13, 2013) (quoting *In re Will of Wiltbank*, 2005 WL 2810725, at *6 (Del. Ch. Oct. 18, 2005)).

In his Response, Clarke claims that he had a prior working relationship with the law firm of Kirkland & Ellis LLP, the Debtors' bankruptcy counsel, and with Jefferies, LLC, the Debtors' investment banking firm. He specifies that his "prior working relationship with and trust in both Hessler and Szlezinger" unduly influenced him to sign the Notes. AP Doc. 76 at 4. Clarke asserts in his Answer that Lara, the company wholly owned by Clarke and his wife, consulted with Kirkland and Ellis regarding filing for bankruptcy, and further mentions in his Response that there were transactions in which both he (or entitles he had some relationship with) and Kirkland & Ellis LLP or Jefferies, LLC were involved. However, he never contends that he had any prior direct involvement with either Hessler or Szlezinger specifically. During the pendency of the bankruptcy cases Clarke was well-aware that neither of the firms were working on his behalf, and Clarke was represented by his own counsel (and at most times multiple counsel) at least through the time that the Settlement was negotiated and the Notes signed; thus, it is not plausible that the parties dealt on unequal terms, or that Clarke had a justifiable trust in Kirkland & Ellis LLP or Jefferies, LLC. Perhaps most importantly, Clarke, again, has not supported his allegations with affidavits or other evidence.

The affirmative defenses of coercion and duress are similar to undue influence under Delaware law:

> Duress and coercion are not mutually distinctive. Rather, duress is sometimes called coercion. The elements for duress, and therefore coercion, are similar to undue

> influence. In order for duress or coercion to exist, there must be (1) a "wrongful" act that (2) overcomes the will of the person (3) who has no adequate legal remedy to protect his interest. "In order for the second element to be met, [the] wrongful act must have been of such a nature as to override the judgment and will of the other party."

*Patrick v. Ellis*, C.A. No. N12C–05–220 MJB, 2013 WL 5800908, at *5 (Del. Oct. 18, 2013) (footnotes omitted). Thus, in order for Clarke to prevail on these affirmative defenses based on the alleged representations made by Hessler and Szlezinger, those representations must constitute wrongful acts that rose to the level of overriding Clarke's judgment and will.

Throughout his Response Clarke refers to statements allegedly made by Hessler and Szlezinger to the effect that, if he did not agree to sign the Notes, he would be subject to more litigation and risk owing more money. Clarke contends that he was shown a "dire picture of the possible outcomes" unless he signed the Notes. AP Doc. 76 at 4. If the Court assumes that Hessler or Szlezinger actually made the alleged statements to Clarke, there is nothing in the record to suggest that the statements were sufficient to overcome his will. In fact, the evidence is to the contrary. Clarke was represented by counsel at the time the settlement negotiations took place, and he admittedly authorized counsel to sign the settlement agreement. Furthermore, the Trustee has produced testimony from Clarke that he signed the Notes in an exercise of his business judgment at a time when he had the resources to pay, and his affirmative defenses were born out of necessity:

> [W]hen the lawsuit was filed, I decided I would have to defend myself and . . . I was still hoping the promissory notes would get paid, but the only place I see that happening is from is liquidation of illiquid assets that I hold and disgorgement of fees from those people that I believe, you know, unduly, you know, coerced me into executing the agreement and, you know, they benefitted from that undue influence.

17

Case 19-00089-TOM Doc 94 Filed 11/16/20 Entered 11/16/20 11:00:21 Desc Main
Document Page 17 of 18

Clarke Dep. 97:6-13, AP Doc. 48-1.  Because Clarke has not established that existence of the affirmative defenses of undue influence or coercion and duress, these affirmative defenses also fail.

Clarke has presented his affirmative defenses of anticipatory breach, undue influence and coercion and duress through only labels and conclusions.  He has produced no evidence to support his allegations or otherwise raised a genuine issue of material fact sufficient to defeat the Trustee's Motion.  Because the Trustee has met his burden to establish that there is no genuine issue of material fact regarding Clarke's execution of the Notes or his failure to pay, and Clarke has not successfully presented affirmative defenses that would excuse his performance under the Notes, the Trustee's Motion for Summary Judgment is due to be granted.  It is therefore

**ORDERED, ADJUDGED, and DECREED** that Liquidating Trustee's Motion for Summary Judgment is **GRANTED**.  A separate Judgment shall be entered in accordance with this Memorandum Opinion and Order.

Dated:  November 16, 2020  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm